KINSTON COTTON MILL v. ATLANTIC COAST LINE RAILROAD
COMPANY.

(Filed 27 October, 1915.)

**1. Appeal and Error—Objections and Exceptions—Statements by Court.**

Objection, taken only in the assignments of error in the case on appeal, that the trial judge misstated the evidence to the appellant's prejudice, will not be considered on appeal, it being required that the attention of the trial judge be called thereto and exception taken, at the time or after the charge has been delivered, so as to afford him an opportunity to make the correction, if he has made the mistake.

**2. Carriers of Goods—Delivery—Principal and Agent—Trials—Evidence—Expression of Opinion—Statutes.**

In an action by the consignee against the carrier of goods to recover damages for the failure of the latter to deliver the shipment, where there is evidence tending to show that a certain drayman customarily received the goods for the plaintiff, to whom delivery had been made, without giving a receipt therefor by the defendant, a charge by the court to the jury is held correct, that if they found that the drayman was the authorized agent of the plaintiff, a delivery to him would be a delivery to the plaintiff; and an expression by the judge that a delivery by the defendant without taking a receipt was a careless act, is not held, under the circumstances, as an expression of opinion by the court, prohibited by the statute, or was intended, or understood by the jury, in the sense of a reflection upon the moral character or integrity of the agent, defendant's witness, who had testified to the fact.

APPEAL by defendant from *Peebles, J.,* at the March Term, 1915, of LENOIR.

Civil action tried upon these issues:

1. Were the two cases of yarn the property of the plaintiff? Answer: "Yes."

2. Did the defendant negligently fail to deliver the two cases of yarn to Suffolk Knitting Mills? Answer: "Yes."

3. What sum, if any, is the plaintiff entitled to recover of the defendant? Answer: "One hundred and sixteen and 44-100 dollars ($116.44), without interest."

*G. V. Cowper, R. H. Lewis for the plaintiff.*
*Rouse & Land for the defendant.*

BROWN, J. There are only two assignments of error, both relating to the charge of the court.

The first relates to the charge bearing upon the evidence of one Churn, the agent for the defendant. It is contended that the court misstated the testimony of Churn in reciting it to the jury. It is contended that Churn stated positively that the thirteen cases of goods had been delivered, and that the court, in referring to the evidence,

stated that the witness Churn testified that two of the cases had not been received. It was the duty of the defendant, at the time, to have called the attention of the court, at the conclusion of the charge, to the misstatement of the testimony, in case any had been inadvertently made, in order that an opportunity might be then and there given to correct it. It appears from the record that no exception was taken at the time, and that his Honor's attention was not called to it and that the objection first appears in the assignments of error.

The only other assignment of error is as follows:

"That the court erred in charging the jury: 'Now, if you are satisfied that John Marshall was the authorized drayman to receive freight from the railroad company, and you are further satisfied that it was delivered to John Marshall, as testified to by one of the witnesses, then you should answer that second issue "No," because that would be a delivery to the knitting mills. It was not necessary that they should have a receipt for it.

" 'If they had a man there authorized to go after their goods; and he went there, and the railroad company had been in the habit of delivering goods to him without an order, it was very careless on the part of the railroad agent there to do it; still it was not necessary to take a receipt for it; and if you find that John Marshall was the authorized drayman, and he went there and got that yarn from the railroad company, why, then, the court charges you that that would be a delivery to the knitting mills. We all take notice that railroads do not send around packages to the consignees like express companies do. We have to send for them.' "

It is contended that in this part of the charge the court instructed the jury that if Marshall was the authorized agent of the consignee, and the railroad company had been in the habit of delivering goods to him without an order, it would be a delivery to the consignee. The defendant insists that the court thereby required the jury to find that Marshall was the agent of the consignee, and also that the agent had been in the habit of delivering goods to him for the consignee. We do not think the assignment can be sustained.

The court instructed the jury repeatedly that if they should find that Marshall was the authorized drayman, and he received the goods from the defendant, it was a legal delivery to the plaintiff. His Honor might well have instructed the jury that all the evidence proved, and that the plaintiff admitted that Marshall was the regular drayman for the plaintiff, and that it was admitted that if the goods were delivered to Marshall, the defendant would not be liable. The whole case seems to turn upon the fact as to whether the goods were delivered to the drayman or not.

To put the matter beyond controversy, after the jurors had started to retire, the court recalled them and further charged them as follows: "If you should find that John Marshall was their authorized drayman, and that he got their property, and it was delivered to him, that was a delivery to the company."

It is further contended that the words embodied in the said charge were practically an expression of opinion upon the facts by the judge. It is true his Honor said it was a very careless act on the part of the railroad agent to deliver goods without taking a receipt for them, but we do not think this amounts to an expression of opinion upon the facts at issue, nor do we think that it was intended by the judge or understood by the jury to be in any sense a reflection upon the moral character and integrity of the witness Churn.

The observation of his Honor that it was a careless act has some foundation in the admissions of the witness Churn, himself, who admitted "that it is against the rules of the defendant company to deliver any freight unless there is a signature of the person to whom it is delivered." But the witness seeks to justify his acts by saying, "But lots of them do it. They were doing that before I went there."

While the words of his Honor objected to seem to have been unnecessary, and might well have been omitted, we are satisfied that they had no appreciable effect upon the jury, so far as to influence their verdict.

No error.